**US IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FLIPCAUSE, INC.,[1]<br><br>        Debtor. | Chapter 11<br><br>Case No. 25- (_____) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL**
**ORDERS (I) AUTHORIZING THE DEBTOR TO (A) PAY CERTAIN**
**EMPLOYEE COMPENSATION AND BENEFITS, AND (B) MAINTAIN AND**
**CONTINUE SUCH BENEFITS AND OTHER EMPLOYEE-RELATED**
**PROGRAMS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "**Debtor**"), by and through its proposed undersigned counsel, hereby moves (the "**Wage Motion**") for entry of interim and final orders, substantially in the forms attached hereto as Exhibit A and Exhibit B, (i) authorizing but not directing the Debtor, in its discretion, to pay Prepetition Employment Obligations (as defined below) and maintain the Employee Benefit Obligations (as defined below) and (ii) granting certain related relief. In support, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with the Wage Motion to the extent

---

[1] The last four digits of the Debtor's federal tax identification number are 0758. The Debtor's address is 101 Broadway, FL 3, Oakland, CA 94607.

that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.       On the date hereof (the "**Petition Date**"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.       Additional information regarding the circumstances leading to the commencement of this chapter 11 case and regarding the Debtor's business and capital structure is set forth in the *Declaration of Emerson Ravyn in Support of the Debtor's Chapter 11 Petition and Related Requests for Relief* (the "**First Day Declaration**"),[2] filed contemporaneously herewith.

## RELIEF REQUESTED

4.       By this Wage Motion, pursuant to sections 105(a), 363(b), 507(a), 541, 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, the Debtor requests entry of an interim and final order, substantially in the forms attached as Exhibit A (the "**Interim Order**") and Exhibit B (the "**Final Order**"), authorizing but not directing the Debtor, in its discretion, as deemed necessary to continue to operate and preserve value, to (i) pay all prepetition wages, salaries, and compensation and related administrative and incidental costs (all as described below and collectively, the "**Employee Compensation Obligations**") and prepetition employee benefits (all as described below and collectively, the "**Employee Benefit Obligations**"); (ii) pay all employment, unemployment, Social Security, and federal, state, and local taxes relating to the

---

[2] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the First Day Declaration.

Employee Compensation Obligations and Employee Benefit Obligations, whether withheld from wages or paid directly by Debtor to governmental authorities (collectively, "**Payroll Taxes**"), and make other payroll deductions, including but not limited to retirement and other employee benefit plan contributions, expense reimbursement and voluntary deductions (all as described below, and collectively with the Payroll Taxes, the "**Payroll Deduction Obligations**" and collectively with the Employee Compensation Obligations and Employee Benefit Obligations, the "**Prepetition Employee Obligations**"); and (iii) honor and continue the Debtor's prepetition programs, policies, and practices as described in this Wage Motion with respect to the Prepetition Employee Obligations in the ordinary course of business.

5.      The Debtor estimates that before the final hearing on this Wage Motion, Prepetition Employee Obligations totaling approximately $11,707.25 will be due and payable (the "**Interim Amount**"). The Interim Account includes: (i) Employee Compensation Obligations in the amount of $10,819.53; (ii) Employee Benefit Obligations in the amount of $528.52; and (iii) Payroll Taxes in the amount of $392.20.  To fulfill these imminent commitments, the Debtor requests entry of the Interim Order, authorizing the Debtor to pay Prepetition Employee Obligations in an aggregate amount not to exceed the Interim Amount, subject to the $17,150.00 per-employee cap established by sections 507(a)(4) and (a)(5) of the Bankruptcy Code.  The Debtor seeks the final hearing on this motion so that it may pay all other Prepetition Employee Obligations.

6.      Further, the Debtor requests that this Court authorize all applicable banks and other financial institutions to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtor's bank accounts before the Petition Date for Prepetition Employee Obligations (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtor's bank accounts, as may be necessary), and

authorize the banks and financial institutions to rely on the Debtor's representations as to which checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtor's bank accounts are subject to this motion; *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such payments.

**BASIS FOR RELIEF REQUESTED**

## I.   FACTS SPECIFIC TO RELIEF REQUESTED

### A.   The Debtor's Employees

7.      The Debtor has 6 full-time employees and 5 contractors (the "**Employees**").

### B.   Wages, Salaries, and Related Obligations

#### 1.  Wage and Salary Obligations

8.      Before the Petition Date and in the ordinary course of business, the Debtor typically paid Employee Compensation Obligations semi-monthly.  The Debtor processes payroll through a third-party, Rippling.

9.      The Debtor estimates that, as of the Petition Date, it has approximately $11,707.25, inclusive of Payroll Taxes, outstanding in total accrued prepetition Employee Compensation Obligations, all of which will become due and owing before the final hearing on this motion.  As of the Petition Date, the Debtor is unaware of any employees who individually are owed wages greater than the $17,150.00 cap established by section 507(a)(4) of the Bankruptcy Code.

#### 2.  Leave Policies

10.      The Debtor offers its employees other forms of compensation, including vacation days, holidays, civic duties leave, and bereavement days. These forms of compensation are, in certain cases, required by statute, and in all cases, usual, customary, and necessary for the Debtor to retain qualified employees to operate its business. Failure to provide these benefits could contravene applicable law and harm employee morale and encourage the premature departure of

4

employees. The Debtor therefore requests authority to continue these programs in the ordinary course of business during this chapter 11 case.

> **(a)    Flexible Paid Time Off Policy**

11.     Prior to the Petition Date, the Debtor offered its employees a Flexible Paid Time Off Policy which allowed employees to take the time needed for illness, personal business, bereavement, civic duty and/or vacation. The Debtor's employees were not limited in the amount of time and/or days they could take pursuant to the Flexible Paid Time Off Policy. Additionally, the Debtor's employees were offered eight paid holidays per year.

### 3.  Expense Reimbursements

12.     In the ordinary course of its business, some of the Debtor's employees incur expenses on behalf of the Debtor.  All expenses incurred on behalf of Debtor, by authorized Employees, are charged to the Debtor's corporate credit cards. As of the Petition Date, the Debtor does not have any expense reimbursement obligations to Employees due and outstanding.

## C.      Health and Welfare Benefits

13.     Prior to the Petition Date, the Debtor offered its Employees various health and welfare benefits, including medical, dental, vision, life, and disability (long and short term) insurance, as well as health savings and 401(k).

14.     The Debtor contributes approximately $5,380.00 monthly towards the cost of Health and Welfare benefits.

## II.  LEGAL BASIS FOR RELIEF REQUESTED

**A.      Payment of the Prepetition Employee Obligations is Appropriate Under Sections 363(b) and 105(a) of the Bankruptcy Code and the Doctrine of Necessity**

15.     To the extent that use of the property of Debtor's estate is implicated here, the relief requested is appropriate under sections 363(b) and 105(a) of the Bankruptcy Code and the doctrine

of necessity.  Under section 363(b)(1) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, "use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court may approve an application under section 363(b) upon a showing of a good business reason for the disposition).  For a court to approve the use, sale, or lease of estate property under section 363(b) of the Bankruptcy Code, the debtor must "articulate some business justification, other than mere appeasement of major creditors [.]" *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (holding that the debtor's payment of prepetition claims was necessary to protect its business and to ensure successful reorganization).

16.    Likewise, section 105(a) of the Bankruptcy Code empowers courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175.  Section 105 permits a court to authorize the "pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NYR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (*citing Ionosphere Clubs*, 98 B.R. at 177).

17.    The Debtor submits that payment of the Prepetition Employee Obligations is necessary and appropriate; and within the Court's power to authorize under sections 363(b) and 105(a) of the Bankruptcy Code pursuant to the doctrine of necessity.  In a chapter 11 case, the doctrine of necessity is a mechanism by which the bankruptcy court can exercise its equitable

power to allow payment of prepetition claims. *See In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims when payment is essential to continued operation of the debtor, such as where there is a "possibility that the creditor will employ an immediate economic sanction, failing such payment"); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the doctrine of necessity "permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (noting that section 105 and the doctrine of necessity provide courts with authority to permit payment of prepetition claims necessary to facilitate a successful reorganization); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that debtors may pay prepetition claims that are essential to continued operation of business). The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11— "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176.

18.     The relief requested in this motion is an appropriate exercise of the Debtor's business judgment under sections 363(b) and 105(a) of the Bankruptcy Code. Continued payment, without interruption, of the Prepetition Employee Obligations and the continued funding, without interruption, of the compensation and benefits plans, policies, programs, and practices attendant to the Prepetition Employee Obligations as described in this motion are vital to the Debtor's business and will ensure a smooth transition into chapter 11 and enhance the success of this case. If the relief requested in this motion is not granted, the Debtor's business operations will suffer, to the detriment of the Debtor's estate, creditors, and other stakeholders.

19.     Any delay or failure to pay wages, salaries, benefits, and other similar items would irreparably impair employee morale, dedication, confidence, and cooperation; and would adversely impact the Debtor's relationship with its employees at a time when its employees' support is critical to the success of the Debtor's chapter 11 case.  The Debtor simply cannot risk the substantial damage to its business that would result from any decline in employee morale.

20.     Without the relief requested in this motion, the employees could also suffer undue hardship and, in many instances, serious financial difficulties, as some employees will likely need the amounts in question to meet their own personal financial obligations.  Failure to reimburse business-related expenses will cause employees to worry about personal liability for business-related charges, a concern that would discourage employees from devoting their full attention to the Debtor's business and restructuring efforts.

21.     Without the requested relief, the stability of the Debtor's workforce will be undermined, perhaps irreparably, by the likelihood that the Debtor will lose valued employees. Accordingly, the Debtor submits that the requested relief is reasonable and necessary.

**B.      The Debtor Should be Authorized to Pay the Prepetition Employee Obligations Under Sections 1107(a) and 1108 of the Bankruptcy Code**

22.     The Debtor is operating its business as debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code; and therefore is "a fiduciary holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  A chapter 11 debtor in possession has the implicit duty "to protect and preserve the estate, including an operating business's [sic] going-concern value." *Id.*

23.     Courts have noted that a debtor in possession can in certain instances fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*  The *CoServ* court

specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* The court provided a three-prong test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

24.     Payment of the Prepetition Employee Obligations meets the *CoServ* elements. First, the Debtor's employees —an asset that is among the Debtor's most valuable—are central to the success of this chapter 11 case, and thus, it is critical that the Debtor deal with its employees. Second, for the reasons already explained, if the Debtor does not pay the Prepetition Employee Obligations, the Debtor risks the "probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of" the Prepetition Employee Obligations. *Id.* Finally, with respect to its employees, the Debtor has examined other options short of payment of the Prepetition Employee Obligations and has determined that, to avoid significant disruption of the Debtor's business operations, there exists no practical or legal alternative to paying such obligations. Therefore, payment of the Prepetition Employee Obligations is necessary for the Debtor to satisfy its fiduciary duties as debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

## C.     The Prepetition Employee Obligations Constitute Priority Claims Under Section 507(a) of the Bankruptcy Code

25.     The Debtor believes that the majority of the Prepetition Employee Obligations constitute priority claims under sections 507(a)(4), (a)(5), and (a)(8) of the Bankruptcy Code,

which must be satisfied before any general unsecured claims against the Debtor's estate.  11 U.S.C. §§ 507(a)(4), 507(a)(5), 507(a)(8), 726.  Specifically, under section 507(a)(4)(A) of the Bankruptcy Code, claims of employees for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status up to $17,150.00 per individual. 11 U.S.C. § 507(a)(4)(A).  As of the Petition Date, the Debtor believes that there is no employee with accrued unpaid wages exceeding the $17,150.00 cap.  Thus, virtually all the Prepetition Employee Obligations are priority claims that, in any event, will have to be paid in full.  Accordingly, the Debtor requests entry of the Interim Order authorizing the Debtor to pay Prepetition Employee Obligations in an aggregate amount not to exceed the Interim Amount subject to the $17,150.00 cap, followed by the final hearing on this motion authorizing the Debtor to pay all other Prepetition Employee Obligations.

26.     Similarly, under section 507(a)(5) of the Bankruptcy Code, employees' claims for contributions to certain employee benefit plans are also afforded priority unsecured status up to $17,150.00 per employee covered by such plan, less any amount paid under section 507(a)(4).  11 U.S.C. § 507(a)(5)(A).  The same holds true for the payment of the Payroll Taxes, as the relevant taxing authorities generally would hold priority claims under section 507(a)(8) of the Bankruptcy Code for such obligations and their payment will therefore not prejudice other creditors of the Debtor.  *See* 11 U.S.C. § 507(a)(8).[3]  Thus, payment of the Prepetition Employee Obligations merely expedites the treatment afforded to such claims and is consistent with the priority scheme of the Bankruptcy Code.

---

[3] Section 507(a)(8) of the Bankruptcy Code affords priority to, among other things, unsecured claims of governmental units for (i) taxes required to be collected or withheld and for which the debtor is liable in whatever capacity (§ 507(a)(8)(C)) and (ii) under certain circumstances, employment taxes on wages, salaries, or commissions (§ 507(a)(8)(D)).

**D.      Funds Related to the Payroll Taxes and Payroll Deduction Obligations may be Held in Trust and are Not Property of the Estate**

27.      Payroll Taxes withheld from an employee's wages and any other Payroll Deduction Obligations are collected or withheld by the Debtor and may be held in trust for the benefit of the applicable taxing authority.   As a result, Payroll Taxes and other Payroll Deduction Obligations are not property of the Debtor's estate under section 541 of the Bankruptcy Code and, such funds therefore are not available for the satisfaction of creditors' claims.  *See Begier v. IRS*, 496 U.S. 53 (1990) (withheld taxes are property held by the debtor in trust for another and, as such, not property of the debtor's estate); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994) (withheld taxes were subject to a trust); *see generally In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1060 (3d Cir. 1993) (indicating that even if a statute does not establish an express trust, a constructive trust may be found).  Instead, the Debtor may be obligated to remit these funds to the applicable taxing authority.

28.      Many federal, state, and local statutes also impose personal liability on officers and directors of companies for certain Payroll Taxes and any other Payroll Deduction Obligations such entities owe.  To the extent that the relevant Payroll Taxes and other Payroll Deduction Obligations remain unpaid by the Debtor, the Debtor's directors, officers, and executives may be subject to lawsuits or criminal prosecution during the pendency of this chapter 11 case.  Any such lawsuit or criminal prosecution (and the ensuing potential liability) would distract the Debtor and its officers, directors, and executives from devoting their full attention to the Debtor's business and the orderly administration of this chapter 11 case.  The Debtor believes that these distractions would materially undermine their ability to operate in the ordinary course of business and to administer this chapter 11 case, with resulting detriment to any parties in interest.

11

29.     In other chapter 11 cases, courts in this District and others have approved payment of prepetition claims for compensation, benefits, and expense reimbursements similar to those described in this motion.[4]  For these reasons, the Debtor submits that the relief requested is essential, appropriate, and in the best interests of its estate and creditors, and any parties in interest, and therefore, should be granted.

**E.      The Court Should Authorize Banks to Honor and Pay Checks Issued and Electronic Funds Transferred to Pay the Prepetition Employee Obligations.**

30.     The Debtor further requests that the Court authorize and direct its banking institutions and all other applicable banks and other financial institutions to receive, process, honor, and pay any and all checks drawn or electronic funds relating to the Prepetition Employee Obligations, whether such checks were presented before or after the Petition Date.  The Debtor has sufficient liquidity to pay such amounts as they become due in the ordinary course of business, and under the Debtor's existing cash management system, checks or wire transfer requests can be readily identified as relating to an authorized payment of the Prepetition Employee Obligations. For that reason, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  The Debtor also seeks authority to issue new postpetition checks or effect new electronic fund transfers, on account of the Prepetition Employee Obligations to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of the Debtor's chapter 11 case.

---

[4] *See*, *e.g.*, *In re Swift Energy Co.*, Case No. 15-12670 (MFW) (Bankr. D. Del. Jan. 5, 2016) (D.I. 58); *In re Offshore Grp. Inv. Ltd.*, Case No. 15-12422 (BLS) (Bankr. D. Del. Dec. 4, 2015) (D.I. 46); *In re Samson Res. Corp.*, Case No. 15-11934 (CSS) (Bankr. D. Del. Sept. 22, 2015) (D.I. 86); *In re Colt Holding Co. LLC*, Case No. 15-11296 (LSS) (Bankr. D. Del. June 16, 2015) (D.I. 79); *In re Quicksilver Res., Inc.*, Case No. 15-10585 (LSS) (Bankr. D. Del. Mar. 17, 2015) (D.I. 198); *In re Cal Dive Int'l, Inc.*, Case No. 15-10458 (CSS) (Bankr. D. Del. Mar. 6, 2015) (D.I. 66); *In re RadioShack Corp.*, Case No. 15-10197 (BLS) (Bankr. D. Del. Mar. 9, 2015) (D.I. 879); *In re Endeavour Operating Corp.*, Case No. 14-12308 (KJC) (Bankr. D. Del. Oct. 15, 2014 and Nov. 7, 2014).

**F.     Interim Relief is Necessary to Avoid Immediate and Irreparable Harm**

31.     Under Bankruptcy Rule 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate, as set forth in the First Day Declaration, and relief on an interim basis is therefore appropriate under Bankruptcy Rule 6003, if applicable.

32.     The urgency of the relief requested justifies immediate relief. To ensure the relief requested is implemented immediately, the Debtor requests that the Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**RESERVATION OF RIGHTS**

33.     Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. If the Court grants the relief sought herein, any payment made

is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## NOTICE

34.     Notice of the Wage Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) each of the Debtor's twenty (20) largest unsecured creditors; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the State of Delaware; and (v) any other party entitled to notice pursuant to Local Rule 9013-1(m).

35.     Notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  Based on the urgency of the circumstances surrounding this Wage Motion and the nature of the relief requested herein, the Debtor respectfully submits that no further notice is required.

## NO PREVIOUS REQUEST

36.     The Debtor has not made any prior motion for the relief sought in this motion to this Court or any other.

WHEREFORE, the Debtor respectfully requests entry of interim and final orders granting

the relief requested in its entirety and any other relief as is just and proper.

Dated: December 19, 2025          GELLERT SEITZ BUSENKELL & BROWN, LLC

*/s/ Ronald S. Gellert*
Ronald S. Gellert (DE 4259)
Margaret M. Manning (DE 4183)
Denisse Guevara (DE 7206)
1201 North Orange Street, Suite 300
Wilmington, Delaware 19801
Telephone: (302) 425-5806
Facsimile: (302) 425-5814
Email: rgellert@gsbblaw.com
      mmanning@gsbblaw.com
      dguevara@gsbblaw.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*