IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FLIPCAUSE, INC.,<br><br>      Debtor. | Chapter 11<br><br>Case No.: 25-12246-TMH<br><br>Hearing Date: January 15, 2026, at 2:00 p.m. EST<br>Objection Deadline: January 12, 2026 |

**MOTION OF THE CALIFORNIA ATTORNEY GENERAL, A REAL PARTY IN INTEREST, FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE OR IN THE ALTERNATIVE, CONVERSION OF THE CASE TO CHAPTER 7**

THE CALIFORNIA ATTORNEY GENERAL, responsible for the supervision and regulation of California charities and the professional fundraisers and platforms who enable solicitation on their behalf, hereby respectfully moves this Court ("Motion")[1] for entry of an order pursuant to section 1104(a) of title 11, United States Code ("Bankruptcy Code") and Rule 2007.1(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") authorizing the appointment of a Chapter 11 trustee in the above-captioned Chapter 11 case ("Chapter 11 Case") or in the Alternative, Conversion of the Case to Chapter 7 under 11 USC, section 1112(b). In support of this Motion, the California Attorney General ("Movant") respectfully represents the following:

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

## PRELIMINARY STATEMENT

The appointment of a Chapter 11 trustee is required under the standards set forth in section 1104(a) of the Bankruptcy Code. Movant files this motion because of the imminent threat to charitable funds if they remain in the hands of Flipcause, Inc ("Debtor"). Although Movant recognizes that Debtor has legitimate business revenue streams, the gross mismanagement of Debtor's finances and its refusal to provide the Attorney General of the State of California with an accounting of charitable assets, increases the likelihood that all remaining funds are charitable assets and in danger of diversion.

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1334(b) and 157. This is a core proceeding under 28 U.S.C. Section 157(b)(2)(A).

2. Pursuant to Rule 9013-1(f) of the Local Rules, the Movant consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final judgments or orders consistent with Article III of the United States Constitution.

3. Venue is proper before this Court pursuant to 28 U.S.C. Sections 1408 and 1409.

## FACTUAL BACKGROUND

4. On December 19, 2025 ("Petition Date"), Debtor commenced a voluntary case under Chapter 11 of the Bankruptcy Code.

5. Debtor has continued in possession of its property and manages its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No official committee of unsecured creditors has yet been formed.

6. Information regarding Debtor's history and business operations, capital structure, and secured indebtedness, and the events leading up to the commencement of this Chapter 11 case can be found in Debtor's First Day Declaration filed with the Court on the Petition Date.

7. Movant objects to Debtor remaining in possession of its property and believes that cause exists for a disinterested person to be appointed as Chapter 11 trustee to take possession of Debtor's property, to manage its business, and to perform the duties of a Chapter 11 trustee under section 1106(a) of the Bankruptcy Code.

8. The information provided by Debtor in Debtor's Voluntary Petition for Chapter 11 Bankruptcy ("Petition," or D.I. 1), Affidavit of Emerson Ravyn ("Affidavit," or D.I. 4), and testimony of Emerson Ravyn on December 22, 2025,[2] demonstrate gross mismanagement, if not fraud, that poses a present risk of harm to Debtor's more than 3,200 charity clients. The facts are undisputed. By Ravyn's own admissions:

    (a) Debtor holds/passes through (less fees) donations made by the public to Debtor's clients, who are all charities. Debtor's client list exceeds over 3,200 clients. *See* Petition, pgs. 24-67. Yet Debtor only ever held one bank account, a checking account.

---

[2] Due to the holidays, a certified transcript was not available as of this filing.

(b) The checking account currently holds approximately $70,000. Petition, pg. 10. The debt owed to "unsecured creditors," meaning charitable clients of Flipcause, Inc., amounts to more than $29,000,000. Petition, pg. 23.

(c) Debtor's single checking account was used for all company expenses, payroll, contracts, remittance of charitable assets to their clients, and all other business needs. Rayvn testified that only after filing the Petition did Debtor open a single second bank account to hold the donations separate from the operating account.

(d) Other than try unsuccessfully to find a buyer based solely on Ravyn's self-serving opinion, Debtor has taken no actions to improve its financial health or management prior to filing bankruptcy and attempting to discharge the client (charitable) debt.

(e) In the last 90 days Debtor has paid $3,285,069.28 to Ravyn and his business entities. Petition, p. 90.

(f) In the last 90 days Debtor has paid $270,125, to Ravyn's brother and his brother's business entity. Petition, p. 90.

(g) In the last 90 days Debtor has paid $275,781.27 to Flipcause Inc.'s current CEO and the CEO's wife. Petition, p. 90.

(h) Ravyn takes the position that donations made by donors to charities *belong to Debtor* and there is no contractual obligation by which Debtor must remit the donations to the client charities. But Debtor's contract, as read aloud by the Court at the December 22, 2025, hearing, provides that the client accounts are an asset owned and controlled by the account holder.

  (i) Ravyn testified that approximately $600,000 of the funds being held in reserve by Stripe are charitable donations. The revised budget submitted on December 22, 2025, by Debtor appears to earmark all or most of the Stripe funds for operational spending without regard for charitable sourcing or obligations.

  (j) Debtor owns no patents, its only trademark is its name, and its purported value is derived from its computer code alone.

  (k) Since at least July 2025, significant deficit already existed, as Ravyn testified that a July 2025 offer to purchase Debtor for $25,000,000 was "enough to reconcile the balance sheet."

  (l) As the Executive Chairman, Ravyn has had no training or education to lead Debtor out of a multi-million dollar bankruptcy and has learned most of the duties and functions of his role on-the-job.

  9. Movant believes that the appointment of a Chapter 11 trustee is in the best interests of creditors, equity security holders, and other interests of the estate because Debtor's mismanagement of $29 million of charitable funds indicates Debtor's unreliability and untrustworthiness. In addition, there are indicia of fraudulent transfers and self-dealing prior to the bankruptcy filing which cannot be examined by Debtor itself. A disinterested third party is needed to properly execute Debtor's fiduciary duties.

## RELIEF REQUESTED

  10. By this Motion, the Movant seeks entry of an order authorizing the appointment of a Chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code and Bankruptcy Rule 2007.1(a)

because the required "cause" under section 1104(a)(1) of the Bankruptcy Code exists and the appointment of a Chapter 11 trustee is in the best interests of creditors, equity security holders, and other interests of the estate. In the alternative, the Movant seeks conversion of the case so that a chapter 7 trustee can perform the fiduciary responsibilities on behalf of Debtors under section 1112(b) of the Bankruptcy Code.

11. A proposed form of order granting the relief requested in this Motion is attached hereto as Exhibit "A" ("Proposed Order").

**ARGUMENT**

12. Section 1104(a) of the Bankruptcy Code governs the appointment of a Chapter 11 trustee and provides, in part, as follows:

(a) At any time after the commencement of the case, but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee -

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

13. The appointment of a Chapter 11 trustee is an extraordinary remedy. *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 577 (3d Cir. 2003); see also *In re Sharon Steel Corp.*, 871 F.2d 1225 (3d Cir. 1989) (noting that the appointment of a trustee should be the exception, rather than the rule). The need for a trustee must be shown by clear and convincing evidence. *Adam v. Mawil (In re Bayou Grp., LLC)*, 564 F.3d 541, 546 (2d Cir. 2009); *Off. Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 385 F.3d 313, 315 (3d Cir. 2004).

14. Courts uniformly hold that section 1104(a)(1) requires the appointment of a trustee if "cause" is found, and that section 1104(a)(2) provides the court a more flexible, discretionary standard for the appointment of a trustee even if no "cause" exists. *In re Marvel Ent. Grp.*, 140 F.3d 463, 474 (3d Cir. 1998); *In re Sharon Steel Corp.*, 871 F.2d at 1226. For the reasons set forth below, the appointment of a Chapter 11 trustee in this Chapter 11 case is warranted for both "cause" and being in the best interests of creditors and other interests of the estate.

**Cause Exists to Appoint a Chapter 11 Trustee Under Section 1104(a)(1)**

15. Pursuant to section 1104(a)(1) of the Bankruptcy Code, "cause" exists to appoint a Chapter 11 trustee where there is fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor. 11 U.S.C. § 1104(a)(1). This is not an exhaustive list. *In re SunCruz Casinos, LLC*, 298 B.R. 821, 828 (Bankr. S.D. Fla. 2003).

16. Courts have considered other factors to determine whether to appoint a Chapter 11 trustee, such as (a) materiality of the misconduct of the debtor's management, (b) evenhandedness or lack of same in dealings with insiders or affiliated entities vis-à-vis other interested parties, (c) existence of prepetition voidable preferences or fraudulent transfers, (d) willingness or inability of management to

pursue estate causes of action, (e) conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor, and (f) self-dealing by management or waste or squandering of corporate assets. *In re Intercat, Inc.*, 247 B.R. 911, 921 (Bankr. S.D. Ga. 2000).

17.     The court has broad discretion in determining whether the challenged conduct establishes "cause" under section 1104(a)(1). *In re Sharon Steel Corp.*, 871 F.2d at 1225 (applying an abuse of discretion standard of review); *Comm. of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 242 (4th Cir. 1987) (same); *In re Sundale, Ltd.*, 400 B.R. 890, 900 (Bankr. S.D. Fla. 2009) ("While appointment is mandatory once cause is found, it is within the court's discretion, on a case-by-case basis, to determine whether conduct rises to the level of 'cause.'").

18.     The California Attorney General, as a representative of the public, is responsible for protecting assets held in charitable trust, and has primary responsibility for the enforcement of charitable trusts. *Holt v. College of Osteopathic Physicians and Surgeons*, 61 Cal.2d 750, 754-755 (1964). Case law also establishes that the Attorney General represents the public beneficiaries of the charitable trust. *In re Veteran's Industries, Inc. of Long Beach v. Thomas C. Lynch*, 8 Cal.App.3d 902 (1970) (the Attorney General has the duty to protect the beneficiaries' interest in a charitable trust); *In re Ventura*, 217 Cal.App.2d 50, 57 (1963) (the Attorney General has standing to protect charitable gifts); *In re Zahn*, 16 Cal.App.3d 106, 114 (1971) (the Attorney General represents the public which benefits by a charitable trust).

19.     In bringing this motion, it is the Movant's primary concern that as many charitable assets as possible be protected, clawed back, and returned to the rightful beneficiary.

20.     The record in this case, although small, has established ongoing mismanagement and commingling of funds, dishonesty, self-dealing, and potential fraud. The testimony of Debtor's current

executive chairman insisting that the donations made to Debtor's charitable clients *belong instead to Debtor* demonstrated the current leadership's unfitness to manage Debtor's remaining assets. This fact was further supported by the executive chairman's continued and self-serving assertion of the position even after being confronted with the contrary terms and conditions of Debtor's own contracts.

21. Debtor continues to obfuscate the financial management practices of the business by refusing to account for the charitable assets or client funds that it holds. Debtor cannot provide meaningful support for its sale valuation and, until filing the instant petition, took no remedial steps to prevent further indebtedness.

22. The only action Debtor appears to have taken in the 90 days preceding this action is to transfer millions of dollars out of the company for the exclusive and personal benefit of executive staff and their families. Now that Debtor has bled the business dry, it is seeking to discharge its obligations to charitable clients whose funds it held in trust.

23. The charitable assets Debtor held on behalf of clients never belonged to Debtor, and any remaining charitable assets should not be considered part of Debtor's property. See 11 USC §541, sub. (b)(1). Debtor apparently treated all the funds flowing into Flipcause, Inc., as a personal piggybank and has been unable to explain what happened to the $29 million in charitable assets that are missing.

24. Even after the issuance of a Cease-and-Desist Order by Movant, Debtor continued to transfer funds out of Flipcause, Inc., and refused to comply with any provisions the Cease and Desist Order, demonstrating a willingness to flout lawful orders for personal gain.

25. Debtor has demonstrated a complete inability to manage its funds and the charitable funds of their clients to such a degree that it shocks the conscience. The evidence presented thus far

suggests no change in business practices, nor any concern or contrition for what appears to be diversion and dissipation of millions of dollars of donations Debtor held in trust. If Debtor is permitted to remain a debtor in possession, the evidence suggests the diversion will continue unabated.

26. The record before the Court constitutes sufficient cause to appoint a Chapter 11 trustee under the clear and convincing evidence standard of proof. Accordingly, this motion for the appointment of a Chapter 11 trustee under section 1104(a)(1) should be granted.

**The Appointment of a Chapter 11 Trustee is in the Best Interests of Creditors, Equity Security Holders, and the Other Interests of the Estate Under Section 1104(a)(2)**

27. Section 1104(a)(2) of the Bankruptcy Code "creates a flexible standard [that] … allows the appointment of a trustee even when no 'cause' exists" but where to do so would be in the best interest of the constituents. *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Even in the absence of "cause" required under section 1104(a)(1) of the Bankruptcy Code, a court may exercise its discretion and still appoint a trustee under section 1104(a)(2) if doing so is in the best interest of the parties. *In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 90-91 (Bankr. S.D.N.Y. 2007). Therefore, the court has even broader discretionary powers under section 1104(a)(2) and may consider equitable factors to determine whether appointing a trustee is in the interests of the estate and its creditors. See, e.g., *In re Cerleritas Techs., LLC*, 446 B.R. 514, 518 (Bankr. D. Kan. 2011); *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989).

28. The factors considered by courts when determining if the appointment of a trustee is warranted under section 1104(a)(2) include (a) the trustworthiness of the debtor, (b) the debtor's past and present performance and prospects for rehabilitation, (c) the confidence – or lack thereof – of the business community and of creditors in present management, and (d) the benefits derived by the

appointment of a trustee, balanced against the cost of the appointment. *In re Euro-Am. Lodging Corp.*, 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007) (quoting *In re Ionosphere Clubs, Inc.*, 113 B.R. at 168).

29. Debtor has utterly depleted its financial resources to the detriment of charity. It would be in the interest of Debtor's 3,200 charitable clients to have the few remaining assets in Debtor's possession be controlled and administered by an impartial third party.

30. If Debtor remains in possession, there is a clear conflict of interest. The actions by Debtor in the 90 days preceding this action raise concerns about fraudulent and self-dealing transfers and diversion of funds. Debtor cannot be expected to investigate its own conduct. An impartial party, willing to review the entirety of Debtor's actions which led up to the current situation, is the only way to ensure a thorough and equitable process. Many of Debtor's charitable clients (referred to as "unsecured creditors" in the Petition) have placed their faith in this bankruptcy process. The recovery most charitable clients are seeking may be minimal, but with a trustee in place, an orderly and equitable process can be implemented.

31. The appointment of a trustee in this Chapter 11 case is clearly in the best interests of creditors and the estate pursuant to section 1104(a)(2). The benefits of a trustee's objective management of Debtor far outweigh the costs. Accordingly, the Court should appoint a Chapter 11 trustee under section 1104(a)(2) upon this Motion.

## NOTICE

32. Movant will provide notice of this Motion to: (a) Debtor; (b) counsel to Debtor; (c) the US Trustee; (d) counsel for or the holders of the twenty (20) largest unsecured claims against Debtor; (e) all parties that have filed a notice of appearance and request for service in this proceeding of papers

pursuant to Bankruptcy Rule 2002; and (f) any other parties designated by the Court. Considering the nature of the relief requested herein, the Movant submits that no other or further notice is necessary.

## NO PRIOR REQUEST

33. No prior request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Movant respectfully request that this Court enter an order, substantially in the form of the Proposed Order attached hereto, directing that a disinterested person be appointed as Chapter 11 trustee in this Chapter 11 cases pursuant to section 1104(a) of the Bankruptcy Code and Bankruptcy Rule 2007.1(a), and granting such other and further relief as is just and proper.

Dated: January 5, 2026
Los Angeles, CA

Respectfully submitted,

ROB BONTA
Attorney General of California
CAITLIN W. NOBLE
Supervising Deputy Attorney General

_____
KIM KASRELIOVICH
Deputy Attorney General
California State Bar No. 261766
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6473
Fax: (916) 731-3637
E-mail: Kim.Kasreliovich@doj.ca.gov
*Attorneys for California Attorney General, on behalf of the People of the State of California*