**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| FLIPCAUSE, INC., | Case No. 25-12246 (TMH) |
| Debtor.[1] | **Re: D.I. 13 and 163** |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT BETWEEN
THE DEBTOR AND THE PURCHASER, (II) APPROVING SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR
OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS,
(III) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND (IV) GRANTING RELATED RELIEF**

This matter coming before the Court on the Debtor's *Motion for Entry of (I) an Order (A) Approving Bid Procedures and Bid Protections in Connection with the Sale of Substantially All of the Debtor's Assets, (B) Approving the Form and Manner of Notice Thereof, (C) Scheduling and Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (E) Granting Related Relief; and (II) An Order (A) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [D.I. 13] (the "Sale Motion"), filed by the above-captioned debtor (the "Debtor" or "Seller"), and pursued by Jeffrey T. Testa, the Chapter 11 Trustee appointed in this Case (the "Trustee"), in the above-captioned chapter 11 case (the "Case"); and the Court having previously entered the *Order (I) Approving Bid Procedures in Connection with the Sale of All or Substantially All of the Debtor's Assets, (II) Scheduling Bid Deadlines and Auctions, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Procedures for the*

---

[1] The last four digits of the Debtor's federal tax identification number are 0758. The Debtor's address is 101 Broadway, FL 3, Oakland, CA 94607.

*Assumption and Assignment of Contracts and Leases, and (V) Granting Related Relief* [D.I. 235] (the "Bidding Procedures Order" approving the Bid Procedures in connection with the Sale Motion); and S4NP Corporation ("S4NP"), and its permitted designees under the APA (as defined below) (collectively, the "Purchaser") having submitted the highest or best bid for the Purchased Assets (as defined in the APA), as reflected in that certain Asset Purchase Agreement, dated as of February 27, 2026, by and between S4NP and the Debtor (as amended or otherwise modified from time to time, the "APA"), a copy of which is attached hereto as **Exhibit 1**; and the Court having entered the Bidding Procedures Order on February 5, 2026, prior to which time all objecting and interested parties were offered an opportunity to be heard with respect to the relief set forth in the Bidding Procedures Order; and the Court having reviewed and considered: (i) the Sale Motion; (ii) the Bidding Procedures Order, (iii) the APA; (iv) the *Declaration of Danny Vivier in Support of the Sale* [D.I. [•]] (the "Vivier Declaration"); (v) the *Declaration of Jeffrey T. Testa, as Chapter 11 Trustee in Support of Entry of an Order (I) Approving Asset Purchase Agreement Between the Debtor and the Purchaser, (II) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests, (III) Approving Assumption and Assignment of Certain Executory Contracts and (IV) Granting Related Relief* [D.I. 152] (the "Testa Declaration") (vi) the *Declaration of Matt LoCascio in Support of Entry of an Order (I) Approving Asset Purchase Agreement Between the Debtor and the Purchaser, (II) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests, (III) Approving Assumption and Assignment of Certain Executory Contracts and (IV) Granting Related Relief* [D.I. 151] (the "LoCascio Declaration" and together with the Vivier Declaration and the Testa Declaration, the "Sale Declarations"); and (vii) the arguments of counsel made, and the evidence proffered or adduced, at the hearing held before the Court on

2

March 19, 2026 (the "Sale Hearing"); and after due deliberation the Court having determined that the legal and factual bases set forth in the Sale Motion and Sale Declarations establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interest of the Debtor, its estate, and its creditors, and the Trustee having demonstrated good, sufficient and sound business justifications for the relief granted herein;[2]

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Final Order</u>.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.    <u>Statutory Predicates</u>.  The statutory and other legal predicates for the relief sought in the Sale Motion and granted herein are sections 105, 363, and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004, 6006, 9007, and 9014 of the Bankruptcy Rules and Rules 2002-1, 6004-1, and 9006-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion, Bidding Procedures Order, or APA as applicable.

[3]    The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Sale Hearing.

71013/0001-52673378

D.      Notice and Opportunity to Be Heard.   As evidenced by the *Notice of (I) Cancellation of Auction and (II) Successful Bidder* [D.I. 136] (the "Notice of Successful Bidder"), the *Notice of (I) Possible Treatment of Contracts and Leases, (II) Fixing Cure Amounts, and (III) Deadlines Related Thereto* [D.I. 130] (the "Assumption Notice"), the affidavits of service filed with the Court with respect thereto, the Bid Procedures, the Bidding Procedures Order, the APA, the Notice of Successful Bidder, the Assumption Notice, and certain other documents on the case website, the Trustee has provided proper, timely, adequate and sufficient notice of, and a fair and reasonable opportunity to object and be heard with respect to the transaction contemplated by the APA (the "Sale") to all persons and entities entitled to such notice.  Such notice was good, sufficient and appropriate under the circumstances, including but not limited to providing each counterparty to an executory contract to be assumed and assigned in connection with the Sale (each, an "Assigned Contract" and collectively, the "Assigned Contracts") with a full and fair opportunity to object to the assumption and assignment of their respective Assigned Contracts (including with respect to any proposed cure costs or adequate assurance of future performance relating thereto), and no other or further notice of any of the foregoing is required.

E.      Sound Business Purpose; Highest and Best Value.  The Trustee has demonstrated good, sufficient and sound business purposes and justifications for approval of the Sale. The Trustee's entry into the APA on behalf of the Debtor and any ancillary agreements thereto (i) are the result of due deliberation by the Trustee and constitutes a sound and reasonable exercise of the Trustee's business judgment and a proper exercise of the fiduciary duties of the Trustee; (ii) provide value and are beneficial to the Debtor's estate, and are in the best interests of the Debtor, its estate and its stakeholders; and (iii) are reasonable and appropriate under the

4

circumstances.  The Sale represents the highest or best offer received for the Purchased Assets and the best opportunity to maximize the value of the Purchased Assets.

F.      Compliance with Bid Procedures.  The Trustee conducted an open and fair sale process in compliance with the Bidding Procedures Order.  The sale process was non-collusive, substantively and procedurally fair to all parties, was the result of arm's-length negotiations, and was reviewed and approved through appropriate corporate governance processes.  The Trustee: (i) afforded interested potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Debtor's Assets, (ii) provided potential purchasers sufficient information to enable them to make an informed judgment on whether to bid on the Assets, (iii) considered all bids submitted, and (iv) determined, in his reasonable business judgment, in a manner consistent with his fiduciary duties, that the APA represented the highest or otherwise best bid for the Purchased Assets.  Based upon the circumstances and record of this Case, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

G.      The deadline to file an objection to the proposed assumption, assignment, or transfer of an Assigned Contract (including any proposed Cure Costs and the sufficiency of the adequate assurance of future performance provided) (an "Assigned Contract Objection") has expired and to the extent any party to an Assigned Contract timely filed a Cure Objection, all such Assigned Contract Objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties.  To the extent that any party to an Assigned Contract did not timely file a Cure Objection by March 12, 2026, such party shall be deemed to have consented to (i) the assumption, assignment and sale of the Assigned Contract in connection with the Sale

5

(including any adequate assurance with respect thereto) and (ii) the proposed Cure Cost set forth on the Assumption Notice.

H.    <u>Fair Consideration</u>.  The consideration the Purchaser will pay under the APA (i) constitutes fair and reasonable consideration for the Purchased Assets; (ii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act and other laws of the United States, any state, territory, possession thereof or the District of Columbia, and (iii) satisfies the requirements of the "entire fairness" standard under applicable law.  No other person or entity or group of entities has offered to purchase the Assets for greater value to the Debtor's estate than the Purchaser.

I.    <u>Free and Clear Sale</u>.  The Purchased Assets constitute property of the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.  The Debtor may sell the Purchased Assets free and clear of all Interests (as defined herein) (other than any Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Any holders of Interests in the Purchased Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Interest pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) and, therefore, are adequately protected by having their Interests in the Purchased Assets attach solely to the proceeds of the Sale ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force and effect that such Interests had immediately prior to the consummation of the Sale, subject to any rights, claims or defenses of the Trustee and the Debtor's estate.  Any Interest holders that did not object, or that withdrew their

71013/0001-52673378

objections, to the Sale, are deemed to have consented to the Sale of the Purchased Assets free and clear of their respective Interests in the Purchased Assets pursuant to section 363(f)(2) of the Bankruptcy Code. Notwithstanding the foregoing, (i) the liens and Interests of Grand Avenue Investments LP ("Grand Avenue") shall attach to the net proceeds of the sale in the same order of priority, with the same validity, force, and effect that such liens Interests had prior to the Sale, subject to any rights, claims or defenses of the Trustee and the Debtor's estate; and (ii) such proceeds will not be distributed by the Trustee (a) without a further order of the Court, on notice to Grand Avenue and other parties entitled to receive notice, or (b) unless by written agreement between the Trustee and Grand Avenue upon notice and opportunity to object of the Official Committee of Unsecured Creditors.

J.      Interests.  As used in this Order, the term "Interest" includes, in each case to the extent against or with respect to the Debtor or in, on, or against or with respect to any of the Purchased Assets: liens (as defined in section 101(37) of the Bankruptcy Code), claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, inchoate or not, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this Case, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (i) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases,

7

subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights of use or possession, subleases, leases, conditional sale arrangements, or any similar rights, (ii) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtor, the Trustee, or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of this Case, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual or tort rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtor's or the Purchaser's interest in the Purchased Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtor or any multiemployer plan to which the Debtor has at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupation disease, or unemployment or temporary disability claims, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act

of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (i) state or federal discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtor or any of its predecessors, or (l) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or business of the Debtor prior to the Closing; (x) any executory or non-executory contract or unexpired lease to which the Debtor is a party that is not an Assigned Contract; (xi) any other Excluded Liabilities (as defined in the APA); and (xii) any of the foregoing Interests arising under or in connection with any acts, or failures to act, of the Debtor or any of the Debtor's predecessors or affiliates, including, but not limited to, those arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable law or otherwise.

K.      <u>No Successor or Other Derivative Liability</u>.  By consummating the Sale pursuant to the APA, the Purchaser is not a mere continuation of the Debtor, the Debtor's estate, or any enterprise(s) of the Debtor, and there is no common identity between the Purchaser and the Debtor. The Purchaser is not, and is not holding itself out as, a continuation of the Debtor.  The Purchaser

9

is not a successor to the Debtor or the Debtor's estate by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtor or the Debtor's estate.  Neither the Purchaser nor any of its affiliates nor any of their respective successors, assigns, managed funds or accounts, members, managers, representatives, limited or general partners, principals, officers, agents, directors, employees, or direct or indirect equity holders, investors, or owners (or the equivalent thereof) (each, a "Purchaser Related Person" and collectively, the "Purchaser Related Persons") shall assume or in any way be responsible for any obligation or Liability (as defined in the APA) of the Debtor (or any affiliate or predecessor of the Debtor) or the Debtor's estate, except as expressly provided in the APA.  The sale and transfer of the Purchased Assets to the Purchaser, including the assumption by the Debtor's estate and assignment, transfer and/or sale to the Purchaser of any of the Assigned Contracts, will not subject the Purchaser and the Purchaser Related Persons to any Liability with respect to the operation of the Debtor's (or the Debtor's predecessors') business prior to the Closing or by reason of such transfer.  Without limiting the generality of the foregoing, and except as expressly provided in the APA, the parties intend and the Court hereby finds that the Purchaser Related Persons shall not be liable for any Lien or Liability against the Debtor, or any of their predecessors or affiliates, and the Purchaser Related Persons shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date (as defined in the APA), whether now existing or hereafter arising, or whether fixed or contingent, with respect to the Business (as defined in the APA), the Purchased Assets or any Liabilities of the Debtor arising or attributable to periods prior to the Closing Date.  The Purchaser would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability," *de facto* merger, or theories of similar effect.

10

L.      Immigration-Related Findings.  Notwithstanding anything to the contrary in this Order, solely for the purpose of allowing the Purchaser (and its permitted designees) to sponsor and maintain visas and visa applications (including with respect to H1-B visas) and lawful permanent residence (including "green cards" and applications for the same) for any Employees (collectively, the "Immigration Procedures"), and for no other purpose, from and after the Closing Date, (i) the Purchaser and its permitted designees under the APA shall be deemed to be the successors in interest to the Debtor for all purposes in connection with the Immigration Procedures, and (ii) all decisions with respect to the Immigration Procedures (including as to the continuation or termination thereof or any adjustments or other modifications thereto) shall be made and determined by the Purchaser in its sole discretion.

M.      Good Faith; No Collusion.  The Trustee, the Purchaser and their respective counsel and other advisors have negotiated and entered into the APA and each of the transactions contemplated thereby in good faith, without collusion and from arm's-length bargaining positions. The Purchaser is a good faith purchaser and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all of the protections afforded thereby. The Trustee was free to deal with any other party interested in acquiring all or some of the Purchased Assets.  Neither the Trustee nor the Purchaser have engaged in any conduct that would cause or permit the Sale, the APA or any of the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) of the Bankruptcy Code.  Neither the Purchaser nor the Purchaser Related Persons have violated section 363(n) of the Bankruptcy Code by any action or inaction.  The Purchaser has not acted in a collusive manner with any person or entity.  All

11

payments to be made by the Purchaser and all agreements entered into by the Purchaser and the Trustee under the APA in connection with the Sale have been disclosed and are appropriate.

N.    Validity of the Sale.    The consummation of the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(k), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been complied with in all respects in connection with the Sale.    As of the Closing, the sale and assignment of the Purchased Assets and the Assigned Contracts to the Purchaser will be a legal, valid and effective transfer of the Purchased Assets, and will vest the Purchaser with all right, title and interest of the Debtor in and to the Purchased Assets free and clear of all Interests (other than any Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order).    The Trustee is authorized to execute the APA and all other documents contemplated thereby, and the Sale has been duly and validly authorized by all necessary corporate action(s) of the Trustee.    Upon entry of this Order, other than any consents identified in the APA, no consent or approval from any other person, entity or legal authority is required to consummate the Sale.

O.    No Sub Rosa Plan.    Neither the Sale nor the APA impermissibly restructures the rights of any of the Debtor's creditors or impermissibly dictates the terms of a liquidating plan of reorganization of the Debtor.    Neither the Sale nor the APA constitutes a *sub rosa* or *de facto* plan of reorganization or liquidation.

P.    No Stay of Order.    Time is of the essence to implement the APA and consummate the Sale.    The Sale must be approved and consummated promptly in order to preserve the value of the Purchased Assets and to maximize the value to the Debtor, its estate, its creditors and all other parties in interest and to ensure the Debtor's compliance with its obligations under any post-petition financing agreements.    The Trustee has demonstrated compelling circumstances and sound

12

business justifications for the immediate approval and consummation of the Sale as contemplated by the APA.  Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), 7062 or any applicable provisions of the Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.

Q.      Single, Integrated Transaction.   Entry of this Order approving the APA is a necessary condition precedent to the Purchaser consummating the Sale.  The provisions of this Order and the APA and the transactions contemplated hereby and thereby are inextricably linked and technically and collectively constitute a single, integrated transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      Sale Motion Granted.  The Sale Motion and the relief requested therein (to the extent not previously granted by the Court pursuant to the Bidding Procedures Order or otherwise) are GRANTED and approved as set forth herein.

2.      Objections.  Any objections or reservation of rights filed or asserted in response to the Sale Motion and the relief granted herein, to the extent not resolved as set forth herein or on the record at the Sale Hearing, are hereby overruled on the merits in their entirety with prejudice, other than any Assigned Contract Objections continued to a later hearing by agreement of the parties.  Those parties who did not object or withdrew their objection to the Sale Motion are deemed to have consented to the Sale pursuant to and for purposes of section 363(f)(2) of the Bankruptcy Code.

3.      Sale Approved.   The APA and all ancillary documents and transactions contemplated thereby, including the Sale, are APPROVED.

71013/0001-52673378

4.      Prior Findings of Fact and Conclusions of Law.  The Court's findings of fact and conclusions of law in the Bidding Procedures Order and the findings of fact recited above are incorporated herein by reference.

5.      Debtor's Performance Authorized.  The Trustee is hereby authorized to enter into and perform its obligations under the APA, and to take such other actions as may be necessary or desirable to effectuate the terms of the APA, including providing transition services, if needed, and other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA, the Sale, or this Order, without further order of the Court. The Trustee is hereby further authorized to take all other actions as may reasonably be requested by the Purchaser or otherwise for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to the Purchaser's possession any or all of the Purchased Assets, as may be necessary or appropriate for the Trustee to perform its obligations under the APA and consummate the Sale, including executing and filing such statements, instruments, releases and other documents with respect to the Purchased Assets that are necessary or appropriate to effectuate the APA, the Sale, or this Order.

6.      Valid Transfer.  Effective as of the Closing Date, the sale and assignment of the Purchased Assets by the Trustee on behalf of the Debtor's estate to the Purchaser (or, if designated by the Purchaser at or prior to Closing, to one or more wholly owned subsidiaries of the Purchaser) shall constitute a legal, valid, and effective transfer and assignment of the Purchased Assets, notwithstanding any requirement for approval or consent by any Person.

7.      Assumption and Assignment of Assigned Contracts.  The assumption and assignment of the Assigned Contracts by the Trustee on behalf of the Debtor's estate to the Purchaser free and clear of all Interests (other than any liens and Assumed Liabilities expressly

14

assumed under, or expressly permitted by, the APA or this Order) pursuant to the terms of the APA is hereby approved, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Upon the Trustee's assumption and assignment of the Assigned Contracts to the Purchaser, subject to the payment of the Cure Costs with respect thereto, each applicable counterparty shall be forever barred, estopped and permanently enjoined from raising or asserting against the Debtor, the Trustee, the Purchaser or its respective property, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or unliquidated senior or subordinate), counterclaim, defense, setoff or any other matter arising under or out of, in connection with or in any way related to, the Assigned Contracts that existed as of the Closing Date or arising by reason of the Closing.  Upon the Trustee's assumption and assignment of the Assigned Contracts to the Purchaser, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtor in and to the Assigned Contracts and the Assigned Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms.  If any Assigned Contract is designated by the Purchaser to be assigned to a designated subsidiary or affiliate of the Purchaser at Closing, such contract shall be deemed to have been assigned directly to such designee, and the Purchaser shall have no liability or obligation with respect to such Assigned Contract from and after the Closing.  As soon as reasonably practicable after the Closing, the Trustee shall file a notice of the Closing, attaching the list of the Assigned Contracts assumed and assigned to the Purchaser effective as of the Closing Date.

8.     Free and Clear Sale.  The sale and transfer of the Purchased Assets to the Purchaser will vest the Purchaser with all right, title and interest of the Debtor and its estate in and to the

15

Assigned Contracts and the Purchased Assets free and clear of any and all Interests incurred or arising prior to the Closing of any person or entity (other than any Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order), pursuant to section 363(f) of the Bankruptcy Code, with all such Interests to attach to the net proceeds of the Sale ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the consummation of the Sale, subject to any rights, claims or defenses of the Trustee and the Debtor's estate.  Notwithstanding the foregoing, (i) the liens and Interests of Grand Avenue shall attach to the net proceeds of the sale in the same order of priority, with the same validity, force, and effect that such liens Interests had prior to the Sale, subject to, subject to any rights, claims or defenses of the Trustee and the Debtor's estate; and (ii) such proceeds will not be distributed by the Trustee (a) without a further order of the Court, on notice to Grand Avenue and other parties entitled to receive notice, or (b) unless by written agreement between the Trustee and Grand Avenue upon notice and opportunity to object of the Official Committee of Unsecured Creditors.

9.    Except with respect to Assumed Liabilities, effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser or any Purchaser Related Person or their assets (including the Purchased Assets) with respect to any (a) Interest in the Purchased Assets incurred or arising prior to the Closing, or (b) successor, transferee, vicarious or other similar liability or theory of liability, including (i) commencing or continuing any action or other proceeding pending or threatened, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of the Court or the agreements or actions contemplated or

16

taken in respect hereof or thereof; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Interest; (iv) asserting any setoff, right of subrogation or recoupment of any kind; or (v) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

10.    The provisions of this Order authorizing the sale and transfer of the Assigned Contracts and the Purchased Assets free and clear of Interests (other than any Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order) shall be self-executing, and neither the Trustee, the Debtor, nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate or implement the provisions of this Order.  For the avoidance of doubt, on or after the Closing Date, the Trustee and the Purchaser shall be authorized, but not directed, to file any such releases, termination statements, assignments, consents or other instruments in any jurisdiction to record the release, discharge and termination of Interests in the Assigned Contracts and the Purchased Assets pursuant to the terms of this Order.

11.    Direction to Creditors.  This Order shall be (a) effective as a determination that, as of the Closing Date, all Interests in the Purchased Assets (except as otherwise expressly assumed under, or expressly permitted by, the APA) shall be unconditionally released, discharged and terminated as to the Purchaser and the Purchased Assets; and (b) binding upon all persons and entities, including all the Debtor's creditors and any holder of an Interest in any of the Purchased Assets, and all such persons and entities are hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their respective Interests in the Purchased Assets, if any.  If any person or entity that has filed a financing statement,

17

mortgage, mechanics lien, *lis pendens* or other document, instrument, notice or agreement evidencing any Interest on the Purchased Assets has not delivered to the Trustee on or before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Purchased Assets, the Trustee and the Purchaser are authorized to (x) request that the applicable person or entity execute and file such termination statements, releases, instruments of satisfaction or other documents with respect to the Purchased Assets, and, to the extent such person or entity fails to do so, execute and file such termination statements, releases, instruments of satisfaction or other documents with respect to the Purchased Assets on behalf of the applicable person or entity, and (y) file, register or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Purchased Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every U.S. federal, state, and local government agency, department or office and may be deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every tribal or foreign government agency, department or office.

12.    Recording Officers. All filing agents or officers, title agents or companies, recorders of mortgages or deeds, registrars, administrative agencies, governmental units or departments, secretaries of state, governmental officials and all other persons or entities that may be required by operation of law or the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments regarding the Purchased Assets or who may be required to report or insure any title or state of title in or to the Purchased Assets (collectively, the "Recording Officers"), are hereby authorized to (a) accept any and all documents

18

or instruments necessary and appropriate to consummate the Sale or to record and reflect that the Purchaser is the owner of the Purchased Assets free and clear of all Interests (other than any Assumed Liabilities expressly assumed under, or expressly permitted by, the APA or this Order) and (b) strike all recorded Interests in the Purchased Assets from their records.

13. Direction to Surrender the Purchased Assets. All persons or entities in possession or control of any of the Purchased Assets, either presently or on or before the Closing Date, are directed to surrender possession or control of the Purchased Assets to the Purchaser on the Closing Date.

14. Anti-Assignment Provisions Unenforceable. No section or provision of any Assigned Contract that purports to (a) prohibit, restrict or condition the assignment of an Assigned Contract, including, but not limited to, the conditioning of such assignment on the consent of any counterparty to such Assigned Contract; (b) authorize the termination, cancellation or modification of an Assigned Contract based on the filing of a bankruptcy case, the financial condition of the Debtor or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtor; or (d) provide for additional payments, profit sharing, penalties, conditions, renewals, extensions, charges or other financial accommodations in favor of the counterparty to an Assigned Contract, or modification of any term or condition upon the assignment of a contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force or effect, and any such section or provision constitutes an unenforceable anti-assignment provision under section 365(f) or 365(l), as applicable, of the Bankruptcy Code or is otherwise unenforceable under section 365(e) of the Bankruptcy Code.

15. Direction to Contract Counterparties. All counterparties to Assigned Contracts assigned to the Purchaser in accordance with the terms of this Order and the APA shall cooperate

71013/0001-52673378

with, and expeditiously execute and deliver upon, any reasonable request of the Purchaser, and shall not charge the Purchaser for any instruments, applications, consents or other documents that may be required or requested by any governmental unit or other public or quasi-public authority or other party to effectuate the applicable transfers in connection with the Debtor's assumption and assignment of the Assigned Contracts to the Purchaser.

16.     Omitted Contracts.  If it is discovered that a Contract should have been included on the Assumption Notice but was omitted therefrom (an "Omitted Contract"), the Trustee shall, promptly following discovery thereof (but in no event later than five (5) Business Days after such discovery), (x) notify the Purchaser in writing of such Omitted Contract and the corresponding estimated Cure Costs related thereto (if any) and (y) if requested by the Purchaser in writing (email to suffice), file a motion with the Court on notice to the counterparty to such Omitted Contract seeking entry of an Order fixing the Cure Costs and approving the assumption and assignment of such Omitted Contract to Purchaser or Purchaser's designee (provided that no Omitted Contract shall be assumed by and assigned unless such Omitted Contract shall be accepted at such time in writing (email to suffice) by the Purchaser as an Assigned Contract).

17.     Licenses and Permits.  The Purchaser and its designees shall be authorized, from and after the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtor with respect to the Purchased Assets (including any licenses reasonably necessary to operate the business), and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser or its designees, as applicable, as of the Closing Date.  From and after the Closing, the Purchaser shall undertake commercially reasonable efforts to apply for and obtain any necessary license or permit promptly after the Closing Date;

20

provided, that the licenses and permits of the Debtor shall remain in place for the benefit of the Purchaser or its designees until either a new license or permit is obtained or the existing license or permit is transferred in accordance with the applicable administrative procedures. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of this Case or the consummation of the Sale.

18.     Amendments.   The APA and any related agreements may be amended, supplemented, or otherwise modified by the parties thereto, including to extend any dates or deadlines, without further order of the Court but with notice to the Official Committee of Unsecured Creditors; *provided*, that any material amendments to the APA and any related agreements require further order of the Court; *provided further*, that no such amendment, supplement, or modification shall be made without the consent of any affected creditor if, and only to the extent that, such amendment, supplement, or modification would materially and adversely affect the rights or interests of such creditor.

19.     Binding Order.  This Order and the APA shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtor and the Purchaser, their respective successors and permitted assigns, including, without limitation, any trustee appointed in any chapter 7 case of the Debtor if this Case is converted to a case under chapter 7, all creditors of the Debtor (whether known or unknown), all counterparties to any Assigned Contracts and all Recording Officers.  Neither the Sale nor the APA shall be subject to rejection or avoidance under any circumstances.  This Order and the APA shall inure to the benefit of the Debtor, its estate, its creditors, the Purchaser and its respective successors and assigns.

71013/0001-52673378

20. <u>Failure to Specify Provisions; Conflicts</u>. The failure specifically to include or mention any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Trustee and the Purchaser that the APA be authorized and approved in its entirety, including any amendments thereto as may be made by the parties thereto in accordance with the terms thereof and this Order. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

21. <u>Further Assurances</u>. From time to time, as and when requested, all parties to the Sale shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale, including such actions as may be necessary to vest, perfect, confirm, record or otherwise in the Purchaser its right, title and interest in and to the Purchased Assets and the Assigned Contracts.

22. <u>Automatic Stay</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, to allow the Purchaser to deliver any notice provided for in the APA and to take any and all actions permitted or required under the APA in accordance with the terms and conditions thereof.

23. <u>No Stay of Order</u>. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 and any applicable Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry. The provisions of this Order shall be self-executing. Time is of the essence in implementing the APA and consummating the Sale as soon as practicable.

24. <u>Governing Terms</u>. To the extent there is any inconsistency between the terms of this Order and the terms of the APA, the terms of this Order shall govern.

71013/0001-52673378

25.    Retention of Jurisdiction.    This Court shall retain exclusive jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order and the APA, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith; and (b) decide any issues or disputes concerning or related to this Order, the APA or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions and provisions hereof and thereof, and the status, nature and extent of the Purchased Assets and the Assigned Contracts.

26.    The Trustee is authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

**Dated: March 18th, 2026**
**Wilmington, Delaware**

**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**

23

71013/0001-52673378